No. 13,787.

IN RE INTERROGATORIES OF THE GOVERNOR ON CHAPTER 118,
SESSION LAWS OF 1935.
(... P. [2d] ...)

Decided November 18, 1935.

Mr. Paul P. Prosser, Attorney General, Mr. Norris C. Bakke, Deputy, Mr. Shrader P. Howell, Assistant, Mr. Hudson Moore, of counsel, Mr. Frank Seydel, amicus curiae, affirming the constitutionality of the act.

Messrs. Lee, Shaw & McCreery, denying the constitutionality of the act.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

Pursuant to section 3, article VI, of the Constitution, which provides that "The Supreme Court shall give its opinion upon important questions upon solemn occasions when required by the Governor," his Excellency, Hon. Edwin C. Johnson, has inquired whether the act approved April 4, 1935 (c. 118, Session Laws, 1935), is constitutional.

The Governor's concern grows out of the fact that certain merchants of Colorado, advised that the act in question contravened their constitutional right to conduct restaurants, and anticipating its effective date, filed their bill of complaint in the United States District Court of Colorado, against the Governor and Attorney General, and the State Board of Health, seeking to enjoin its enforcement. Thereupon, as the practice is, a three-judge federal court was convened to consider the matter. On hearing, one judge dissenting, the court issued its temporary restraining order. At this point the Governor made his appeal to us, and since the record indicates that pending our construction of the act the federal court is withholding its further consideration, we have resolved that the question is important and the occasion solemn.

The Attorney General and members of his staff, as well as voluntary private counsel, maintain that the measure is constitutional, while counsel for the merchants in the federal court, appearing here at our request, argue contra.

The legislative enactment is entitled: ''An act relating to foods; to provide for the public health and safety by licensing places where food is prepared for human consumption, to be consumed on the premises, providing regulations, restrictions and conditions under which food may be prepared and sold for consumption therein; providing for the administration, disposition of funds, and penalties for the violation of the provisions of this act.''

The sections of the act important to our examination, read as follows:

''Section 1. *Purpose.* The control and regulation of premises or places wherein food is prepared and sold or served for consumption on such premises; the establishment of standards of purity for foods; and the enforcement of sanitary safeguards imposed upon food handlers, being necessary, this Act shall be deemed an exercise of the police powers of the State for the protection of the social welfare and the health of the people of the State of Colorado.

''Section 2. *Definitions.* As used in this Act:

''(a) 'Person' shall mean natural person, partnership, co-partnership, association, company, corporation, organization, or manager, agent, servant, officer or employee of any of them.

''(b) 'Food' shall mean any substance used, or intended to be used, for human consumption, when the same is prepared for consumption to be consumed upon the premises where sold, which, among other things, shall include all meat, fish, vegetables, bread and condiments, whether simple, mixed or compounded, but shall not include soft drinks, ice cream or ices, and confections.

''(c) 'Restaurant' shall mean an establishment pro-

vided with special space and accommodations wherein, in consideration of payment, meals are habitually furnished to guests, or a place where food is prepared for human consumption to be consumed upon the premises, and whose principal business is the sale of meals, and in which room nothing is sold excepting meals, food, drink and tobaccos. An establishment connected with any business whatsoever, excepting the hotel business and railway dining cars or any room in any place whatsoever, wherein any business is conducted excepting the sale of meals, foods, drinks and tobaccos, or hotel business, is hereby declared not to be a restaurant.

"(d) 'Board' shall mean 'State Board of Health' and its authorized inspectors, agents and employees.

"(e) 'License' shall mean a grant to a licensee to conduct a 'restaurant,' as defined in this act.

"Section 3. From and after a period of thirty (30) days after the effective date of this Act, it shall be unlawful:

"(a) For any person to conduct a 'restaurant' without having obtained a license so to do from the State Board of Health and in accordance with the provisions of this Act.

"(b) To sell or serve to any person or to the public, any 'food' except the same shall be sold or served in a licensed 'restaurant' as defined in this Act; Provided, however, that nothing in section 3 of this Act shall prohibit or limit the operation of private boarding houses, or the serving of food by individuals, organizations or charitable institutions, engaging only in the occasional sale or serving of food.

"(c) For any person to violate any of the provisions of this Act, or the sanitary rules and regulations made hereunder, or to violate any of the rules and regulations of the State Board of Health made pursuant to the provisions of this Act.

"Section 4. For the purpose of regulating and con-

trolling 'restaurants,' establishing of sanitary conditions therein and the enforcement and administration of this Act, the State Board of Health is hereby designated, empowered and authorized as the state licensing and inspection agency.

"Section 5. The duties and authority of the State Board of Health shall be as follows:

"(a) To grant, refuse, suspend or revoke licenses provided by this Act.

"(b) To establish a uniform code of sanitary rules and regulations for the preparation, sale and serving of 'food'; to make such other rules and regulations for the effective administration and enforcement of this Act not inconsistent with the provisions of this Act.

"(c) To hear and determine all complaints against licensees, and to administer oaths, and issue subpoenas to require the presence of person or persons necessary to the determination of any hearing so held.

"(d) To keep in its office a complete record of all the acts and transactions of the Board, which record shall be open to inspection by the public.

"(e) To enforce the provisions of this Act and the code of sanitary rules and regulations, and other rules and regulations made hereunder.

"(f) To cause to be inspected all places licensed by it, at any or all reasonable times.

"Section 6. Any person owning and/or operating a 'restaurant' within this State shall within thirty (30) days after the effective date hereof, make application to the State Board of Health for a license as herein provided. Any other person desiring to own and/or operate a 'restaurant' in this State shall, before undertaking such business, make application to the State Board of Health, as herein provided. Application for licenses under the provisions of this Act shall be made to the State Board of Health, on forms prepared and furnished by the Board, and shall set forth such information as the director may

require, including the name and address of the applicant, together with all the other information deemed necessary by the Board. Before granting any license for which application has been made, the Board may visit and inspect the 'restaurant' or property in which the applicant conducts or proposes to conduct his business. The Board may refuse a license for failure to comply with the sanitary code, or other rules and regulations, or, if in its opinion, the premises on which the applicant conducts or proposes to conduct his business do not meet the requirements of this Act. Upon written demand by an applicant who has been refused a license, the Board shall state in writing its reason for such refusal. The refusal of the Board to grant a license according to the provisions of this Act may be reviewed upon application for writ of mandamus or otherwise by any court of general jurisdiction having jurisdiction of the place for which the application for license was made, and if such court shall determine that such action was without good cause, it shall order the Board to issue such license.

"Section 7. Licenses herein provided shall be granted for a period of one calendar year, or portion thereof remaining at the time of making application for said license, but where application is made for the portion of such calendar year there shall be no reduction of the license fees provided herein because of such fact. All licenses shall expire December 31st of the year for which issued and application for the renewal of licenses shall be made during the month of December of each year. Once a license has been granted under the provisions of this Act, the Board may refuse to renew the same only for violations of this Act or the sanitary code or other rules or regulations established hereunder, unless otherwise provided by law.

"Section 8. Licenses herein provided for shall specify the date of issuance, the period which is covered, the name of the licensee, and the place licensed. Such license

shall be conspicuously displayed at all times in the place thereby licensed, and all constables, sheriffs and police officers shall see to it that every person selling 'foods' and conducting a 'restaurant' within his jurisdiction has procured a license so to do. The fee for such license shall be Ten Dollars ($10.00) for restaurants located in cities of the first or second class, and Five Dollars ($5.00) for restaurants located in towns and other political subdivisions.

"Section 9. In addition to any other penalties prescribed by this Act the Board shall have power on its own motion or on complaint, after investigation and hearing, at which the licensee shall be afforded an opportunity to be heard, to suspend and/or revoke any license for any violation of the provisions of this Act, or of any sanitary or other rule or regulation adopted by the Board, or of any of the terms, conditions or provisions of the license by the licensee or any of the agents, servants or employees of such licensee. Notice of suspension or revocation, as well as any required notice of hearing, shall be given by mailing the same, in writing, to the licensee at the address contained in the license. No suspension shall be for a longer period than six (6) months. Whenever a license is suspended or revoked, no part of the fees paid therefor shall be returned to the holder. Suspension or revocation of licenses may be reviewed, upon application for writ of mandamus, or otherwise, by any court of general jurisdiction, having jurisdiction of the place for which the application for license was made, and if such court shall determine that such action was without good cause, it shall order the Board to reinstate such license.

"Section 10. The code of sanitary rules and regulations, hereinbefore provided, shall include provisions for the initial and periodic examination by the Board, or other competent medical authority, of all employees engaged in the handling of 'foods', and shall also include provision specifying and regulating the matter of places

and the conditions under which 'food' shall be prepared for consumption, and such other sanitary rules as the Board shall deem necessary. Such rules may be modified and changed from time to time. It shall be the duty of every licensee under the provisions of this Act to see that the code of sanitary rules and regulations is enforced in the place for which the license is granted. A licensee failing to enforce such rules and regulations shall be deemed guilty of a misdemeanor and punishable as hereinafter provided in this Act.

"Section 11. Any person violating any of the provisions of this Act or any of the provisions of the sanitary code hereby established shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not to exceed Five Hundred Dollars ($500.00) or imprisonment in the county jail of not more than ninety (90) days, or both such fine and imprisonment. It shall be the duty of the district attorneys of the several districts of this state to prosecute for violations of this Act as for other crimes and misdemeanors."

The Governor's questions are:

1. Does Chapter 118, Session Laws of 1935, when properly construed, prevent a person whose principal business is merchandising, or that other than operating a restaurant, from also engaging in the restaurant business?

2. Does said act, properly construed, permit a dry goods house to go into the restaurant business although it maintained the restaurant in a separate room if the dry goods business would be considered its principal business?

3. Could a dry goods house, or other mercantile concern, operate or conduct a restaurant in a separate room or space suitably partitioned off from the rest of its establishment but with a connecting door or doors, without violating said act?

4. Does said act or any portion thereof, properly con-

strued, violate either section 3 of article II, or section 15 of article II, or section 25 of article II, of the Constitution of the State of Colorado?

5. Does said act, properly construed, violate any other provision of the Constitution of the State of Colorado?

6. Does said act, when properly construed, violate the Fourteenth Amendment to the Constitution of the United States?

It is urged that the act violates the Constitution in the following particulars: (1) That it denies equal protection of the law; (2) that it takes property without compensation; (3) that it denies the use of property without due process of law.

The measure under consideration is based on legislative finding that the preparation and service of meals in the same room where the sale of merchandise is actively carried on, is inimical to the public health. Police power, the genesis of the General Assembly's action, is inherent in government, and was well known to the common law. 4 Blackstone's Comm. 162. "This power * . * * has been said to be as broad as the public welfare. It is an inherent attribute of sovereignty with which the state is endowed for the protection and general welfare of its citizens, * * *" *Rowekamp v. Mercantile-Commerce B. & T. Co.*, 72 F. (2d) 852, 858 (Circuit Court of Appeals, Eighth Circuit). "All authorities agree that the Constitution presupposes the existence of the police power, and is to be construed with reference to that fact." *Village of Carthage v. Frederick*, 122 N. Y. 268, 273, 19 Am. S. R. 490, 10 L. R. A. 178. The statute claiming our attention is the expression of that branch of the government having primary authority to determine what is requisite to promote and preserve health, safety and morals. *Smith v. People*, 51 Colo. 270, 117 Pac. 612; II Cooley's Constitutional Limitations (8th Ed.) p. 1231. Unless by its terms it imports evil, or is calculated to operate arbitrarily, oppressively or unreasonably, courts

may not void the act. *McLean v. Arkansas,* 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315. That in its operation a police measure may increase their labor, decrease the value of their property, or otherwise inconvenience individuals, does not make the act to offend. II Cooley's Constitutional Limitations (8th Ed.) pp. 1228, 1231. By exercise of inherent police power, the sovereign, purposing to promote public health, may fairly and reasonably restrict the use of property. *Beveridge v. Harper & Turner Oil Tr. Co.,* 168 Okl. 609, 35 P. (2d) 435. The unrestricted privilege to engage in business or to conduct it as one pleases, is not guaranteed by the Constitution. *Nebbia v. New York,* 291 U. S. 502. "A large discretion is necessarily vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests." II Cooley's Constitutional Limitations (8th Ed.) p. 1231. "When the subject lies within the power of the state, debatable questions as to reasonableness are not for the courts but for the legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome." *Sproles v. Binford,* 286 U. S. 374, 52 Sup. Ct. 581.

 Referring to the contention that the act is discriminatory and void, because it excepts hotels, dining cars, private boarding houses, and the like, from its operation, we think the clause is but declaratory of the obvious. None of the activities mentioned in the exception come within the act's definition of a restaurant. Besides, the power to legislate on the subject is not to be denied altogether because the law does not embrace "the whole field of possible abuses." *Farmers and Merchants Bank v. Federal Reserve Bank,* 262 U. S. 649, 43 Sup. Ct. 651. See, also, *Miller v. Wilson,* 236 U. S. 373, 383, 35 Sup. Ct. 342; *Carroll v. Greenwich Insurance Co.,* 199 U. S. 401, 26 Sup. Ct. 66; *Consumer's League v. Colorado & So. Ry.*

*Co.*, 53 Colo. 54, 125 Pac. 577; *Driverless Car Co. v. Armstrong*, 91 Colo. 334, 14 P. (2d) 1098. The legislature ''is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.'' *Miller v. Wilson, supra.*

We think the act comes within the competency of the General Assembly, and that it does not violate the specific constitutional provisions, state or federal, to which the Governor has directed our attention. The major objective, as we perceive, premised on public health considerations, was to prevent the operation of a restaurant in a room where merchandising is carried on. It inhibits none, regardless of his other activities, or of what might be regarded as the principal one, from engaging in the restaurant business, but if he elects to be both merchant and restaurateur he must conduct the two businesses in separate rooms. It follows, if explanation be necessary, that questions 1, 4 and 6, we answer in the negative, and question 2, in the affirmative. We regard question 5 as too general to require an answer.

Considering the variability of situations that may arise in the course of the administration of the act, we doubt the propriety of a categorical answer to question 3, and so withhold it.

Mr. Justice Burke and Mr. Justice Holland dissent.

### On Petition for Modification.

Mr. Justice Hilliard.

The Governor and his advisers urge that a more definite answer to interrogatory 3 is ''essential to the determination of this litigation, as contemplated by the federal court,'' and call our attention to what the judges of that court said in the course of a hearing there. A fair summary of the view of the federal court is, that if reasonable means of physical communication between the rooms—the store and the restaurant—were to be af-

forded, it would be disposed to regard the law as constitutional; otherwise, as offending.

We still are of opinion that rather than to anything fundamental, the point emphasized goes to detail of administration, concerning which claimed abuse may have judicial consideration pursuant to section 6 of the act. It was our conception that the variant facts should enter into the determination of the administrative board and of the courts in their examination on review; and that was the sum of our previous answer to the question. But since the rule requires any reasonable construction that will support the validity of the act, in the interest of finality we now answer interrogatory 3 in the affirmative. It should be observed that departure from our earlier reticence finds justification in the assurance of the attorney general and other counsel advocating the constitutionality of the act, that no administrative objection is to be made to the employment of doors between merchandising and restaurant rooms.

MR. JUSTICE HOLLAND dissenting.

I am unable to agree with the majority opinion in this case.

As defined in the act, a restaurant is an establishment whose principal business is the sale of meals, and cannot be one which has any other principal business.

I think the act is arbitrary and unreasonable, is a strained attempt to exercise the police power and is unconstitutional.