The PEOPLE of the State of Colorado, Petitioner,

v.

Marlene BECKER, Dianne Johnson and Thomas Fuselier, Respondents.

No. 86SC242.

Supreme Court of Colorado,
En Banc.

July 5, 1988.

James F. Smith, Dist. Atty., Michael J. Milne, Deputy Dist. Atty., Brighton, for petitioner.

Keller, Dunievitz, Johnson & Wahlberg, Robert Elmer Johnson, Denver, for respondents.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Steven M. Bush, Asst. Atty. Gen., Denver, for amicus curiae.

QUINN, Chief Justice.

We granted certiorari to review a judgment of the District Court of Adams County, which affirmed the county court's dismissal of criminal charges arising out of alleged violations of the Colorado Liquor Code, specifically section 12–47–128(5)(*l*), 5 C.R.S. (1985), which prohibits any person licensed to sell alcoholic beverages for on-premises consumption from permitting any employee to solicit patrons to purchase any alcoholic beverage or "any other thing of value" for the soliciting employee or another employee. In affirming the judgment of dismissal, the district court ruled that the phrase "any other thing of value" was facially overbroad and vague in violation of due process of law. We now reverse the judgment and remand the case to the district court with directions to return the case to the county court for reinstatement of the charges and for further proceedings.

## I.

The defendants in this case are Thomas Fuselier, the licensed owner of a tavern in Adams County, and his two employees, Marlene Becker and Dianne Johnson. The basic facts are undisputed. On March 26, 1985, Becker and Johnson solicited tavern patrons to buy them drinks of orange juice at the price of $6.00 per drink. Posted in the tavern on that date were signs which stated "the solicitation of alcoholic beverages is illegal" and "all girls' drinks are nonalcoholic."

Fuselier was charged with employing persons to solicit from tavern patrons the purchase of nonalcoholic drinks for the soliciting employees in violation of section 12–47–128(5)(*l*), 5 C.R.S. (1985), and Becker and Johnson were charged with conspiracy to solicit from tavern patrons the purchase of these nonalcoholic drinks. On the date of the alleged offenses, section 12–47–128(5)(*l*) of the Colorado Liquor Code provided as follows:

(5) It is unlawful for any person licensed to sell at retail pursuant to this article:

\* \* \* \* \* \*

(1) To employ or permit, if such person is licensed to sell alcoholic beverages for on-premises consumption or is the agent or manager of said licensee, any employee, waiter, waitress, entertainer, host, hostess, or agent of said licensee to solicit from patrons in any manner, for himself or herself or for any other employee, the purchase of any alcoholic beverage or any other thing of value.[1]

The three defendants filed motions to dismiss the charges, alleging that the phrase "any other thing of value" was facially overbroad and vague.[2] The county court agreed and dismissed the charges. The prosecution appealed to the district court, which affirmed the county court's judgment of dismissal. The district court concluded that the phrase "any other thing of value" was facially overbroad because, in the court's view, it unreasonably infringed upon the fundamental rights of free speech and assembly.[3] The court also ruled that the phrase was facially vague because it provided neither sufficient notice

1. In 1986 the General Assembly amended section 12–47–128(5)(*l*) to prohibit employee solicitation of tavern patrons with respect to "the purchase of any food, beverage, or any other thing of value." Ch. 101, sec. 9, § 12–47–128(5)(*l*), 1986 Colo.Sess.Laws 660, 663 (currently codified at § 12–47–128(5)(*l*), 5 C.R.S. (1987 Supp.)).

2. Separate cases were filed against each defendant, but the cases were consolidated for hearing on the motions to dismiss. The conspiracy charges were based on section 18–2–201(5), 8B C.R.S. (1986), which provides that a conspiracy to commit a misdemeanor which is defined by any statute other than one contained in the Colorado Criminal Code and for which no pen-

alty is specified is a class 3 misdemeanor. A class 3 misdemeanor is punishable by a sentence of imprisonment for not more than six months, or a fine of not less than $50 nor more than $750, or by both imprisonment and fine. § 18–1–106(1), 8B C.R.S. (1987 Supp.).

3. In its ruling the district court made reference to the "constitutional right to engage in a lawful business subject to reasonable regulation" and characterized this right as fundamental. While every citizen has a right to engage in a lawful business subject to reasonable governmental regulation, *City and County of Denver v. Nielson*, 194 Colo. 407, 410, 572 P.2d 484, 486 (1977), such right is not "fundamental" for purposes of the overbreadth doctrine.

of the prohibited conduct nor adequate standards for proper enforcement of the prohibition. We thereafter granted the People's petition for a writ of certiorari to review the judgment of the district court.

In addressing the issues of facial overbreadth and vagueness, we will follow the following analytical sequence adopted by the United States Supreme Court in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982), and previously followed by us in *High Gear and Toke Shop v. Beacom*, 689 P.2d 624, 628 (Colo.1984), namely: we will first determine whether the statutory proscription reaches such a substantial amount of constitutionally protected conduct as to suffer from an overbreadth infirmity; and, if the statute is not unconstitutionally overbroad, we will then examine the issue of facial vagueness.

## II.

In determining that the phrase "any other thing of value" suffers from unconstitutional overbreadth, the district court was of the view that the challenged language encroached upon the fundamendal rights of speech and assembly in violation of due process of law. A brief restatement of the basic principles of the overbreadth doctrine will set the legal framework for our resolution of this issue.

## A.

■ A statutory proscription suffers from constitutional overbreadth if, although ostensibly designed to punish activities that are not constitutionally protected, it threatens the existence of protected fundamental rights, such as free speech and assembly, by encompassing those protected activities within its prohibition, even though the same activities might have been properly punished under a more carefully drawn statute. *See, e.g., Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *People ex rel. Tooley v. Seven Thirty-Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985); *High Gear and Toke Shop*, 689 P.2d 624. Because of the judicial recognition that the very existence of a statutory proscription infringing on rights of free speech or association may cause others not before the court to refrain from the exercise of those fundamental freedoms, expanded standing is accorded in overbreadth cases to permit a party to assert not only its own constitutionally protected interests but also the constitutionally protected rights of others. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); *City of Englewood v. Hammes*, 671 P.2d 947, 950 (Colo.1983); *May v. People*, 636 P.2d 672, 675 (Colo.1981). Due to the fundamental nature of the rights implicated by the overbreadth doctrine, a heightened level of scrutiny is involved in overbreadth analysis. When the overbreadth doctrine is applicable to a statutory prohibition, the proponent of the statute must establish that the prohibition is necessary to effectuate very significant governmental objectives and that less drastic alternatives would be unavailing. *E.g., Shelton v. Tucker*, 364 U.S. 479, 488–90, 81 S.Ct. 247, 252–53, 5 L.Ed.2d 231 (1960); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463–66, 78 S.Ct. 1163, 1172–73, 2 L.Ed.2d 1488 (1958). When fundamental freedoms are not implicated by unconstitutional overbreadth, the statute will pass constitutional muster as long as it is reasonably related to a legitimate governmental interest. *See, e.g., Village of Hoffman Estates*, 455 U.S. at 494–97, 102 S.Ct. at 1191–92; *People v. Pharr*, 696 P.2d 235, 237 (Colo.1984).

■ The overbreadth doctrine is not without its limitations. While First Amendment freedoms are fundamental, they are neither absolute nor immune from all legislative restriction. *See Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983); *Prostrollo v. University of South Dakota*, 507 F.2d 775, 781 (8th Cir.1974), *cert. denied*, 421 U.S. 952, 95 S.Ct. 1687, 44 L.Ed.2d 106 (1975). "States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has

declared to be illegal when such expression consists, in part, of 'conduct' or 'action.'" *California v. LaRue,* 409 U.S. 109, 117, 93 S.Ct. 390, 396, 34 L.Ed.2d 342 (1972). Thus, a statutory proscription directed at the regulation of conduct with a speech or associational component, rather than pure speech or association, will not be subject to overbreadth analysis unless the statute is initially determined to be "substantially overbroad." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2918; *Hammes,* 671 P.2d at 950. A further limitation on the overbreadth doctrine is its inapplicability to commercial speech. *Village of Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1192; *High Gear and Toke Shop,* 689 P.2d at 630. Although the line between commercial and noncommercial speech is not always easy to draw, we can say with fair assurance that commercial speech includes such activities as in-person solicitations for pecuniary gain. *See Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 561, 100 S.Ct. 2343, 2348, 65 L.Ed.2d 341 (1980); *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 457–59, 98 S.Ct. 1912, 1919–20, 56 L.Ed.2d 444 (1978).

### B.

■ These principles lead us to conclude that the phrase "any other thing of value" in section 12–47–128(5)(*l*) is not facially overbroad. We initially note that the statutory proscription is clearly calculated to prohibit a licensed tavern operator and tavern employees from exploiting patrons of the establishment by inducing them to purchase alcoholic and nonalcoholic beverages and other things of value for any employee while the patrons are on the premises where alcoholic beverages are sold. To the extent that a speech or associational interest might be implicated by the application of the statute to solicitation activities, such interest is basically a by-product of the conduct involved in the solicitation activity. Any arguable restriction on speech or association, therefore, is an incidental burden at best and one that is constitutionally insufficient for purposes of triggering overbreadth analysis. *See LaRue,* 409 U.S. at 117, 93 S.Ct. at 396.

To the extent that any speech or associational interest might be encompassed by the statutory proscription, it is quite clear that interest involves only the economic benefit of the soliciting employee or other employee and thus is unquestionably commercial in character and outside the scope of the overbreadth doctrine. *See Village of Hoffman Estates,* 455 U.S. at 497, 102 S.Ct. at 1192; *High Gear and Toke Shop,* 689 P.2d at 630. Simply stated, the statute is not directed at speech or associational interests with respect to matters of public interest or concern, but rather verbal conduct that can readily be used in a deceptive or misleading manner against tavern patrons.

Finally, notwithstanding the statutory proscription, a tavern employee remains free to speak to and associate with any person on the premises, so long as the employee refrains from soliciting patrons to purchase an alcoholic or nonalcoholic drink or any other thing of value for the soliciting employee or any other employee. The statutory phrase "any other thing of value" does not so burden the speech and associational interests of tavern employees or others as to amount to a facial overbreadth.

### III.

We now consider whether section 12–47–128(5)(*l*) is facially vague. We again draw upon long-standing principles in resolving this issue.

### A.

Two basic interests underlie the void-for-vagueness doctrine:

First, the interest in fair notice requires the law to be sufficiently definite to alert the populace to the nature of the proscribed conduct so that they may control their actions accordingly. Second, the interest in even-handed treatment requires that the law provide specific standards for those charged with its enforcement so that arbitrary and discriminatory application will be avoided.

*People v. West,* 724 P.2d 623, 626 (Colo. 1986) (quoting *People ex rel. City of Arvada v. Nissen,* 650 P.2d 547, 550 (Colo.1982)). The basic inquiry in a void-for-vagueness challenge is whether the statutory prohibition forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application. *Nissen,* 650 P.2d at 550 (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)); *see also People v. Norman,* 703 P.2d 1261 (Colo.1985); *People v. Aalbu,* 696 P.2d 796 (Colo.1985); *People in the Interest of C.M.,* 630 P.2d 593 (Colo.1981). While a statute must be sufficiently specific to give fair warning of the proscribed conduct, it need not be drafted with mathematical precision. On the contrary, most statutes must be cast in general terms in order to effectively deal with the particular problem addressed by the legislation under varied circumstances. *E.g., People v. Riley,* 708 P.2d 1359 (Colo.1985); *People v. Castro,* 657 P.2d 932 (Colo.1983); *Bollier v. People,* 635 P.2d 543 (Colo.1981). When, as here, a challenged statutory proscription does not implicate fundamental rights of speech or assembly, the statute should be upheld unless a reviewing court is satisfied that the enactment is impermissibly vague in all of its applications, for a person engaging in conduct clearly forbidden by the statute "cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates,* 455 U.S. at 494–95, 102 S.Ct. at 1191 (footnote omitted); *High Gear and Toke Shop,* 689 P.2d at 628. Thus, as long as a statutory proscription "permits persons of ordinary intelligence to distinguish between permissible and illegal conduct and provides workable standards for those responsible for the enforcement and application of the law, due process of law will be satisfied." *West,* 724 P.2d at 626; *see also People v. Randall,* 711 P.2d 689 (Colo.1985); *Pharr,*

696 P.2d 235; *People v. Moore,* 674 P.2d 354 (Colo.1984).

### B.

■ We are satisfied that the phrase "any other thing of value" in section 12–47–128(5)(*l*) is not facially vague. It is an elementary rule of statutory construction that statutory words are generally to be construed according to their commonly understood meaning unless they have acquired a technical or particular meaning by legislative definition or judicial construction. *Binkley v. People,* 716 P.2d 1111, 1113 (Colo.1986); *see* § 2–4–101, 1B C.R.S. (1980). Since the Colorado Liquor Code does not define "any other thing of value," we look initially to the common meaning attributed to that phrase. The term "any thing" refers to an object or entity of whatever kind. The word "value" connotes the monetary, economic, or exchange worth of something. Webster's Third New International Dictionary 2530 (1986); *see also* Black's Law Dictionary 1391 (5th ed. 1979). In common usage, the phrase "any thing of value" means anything to which an economic, monetary, or exchange value can be attributed. As used in section 12–47–128(5)(*l*), the phrase "any other thing of value" appears immediately following the term "any alcoholic beverage," and in its commonly understood sense refers to anything, other than an "alcoholic beverage," which has some economic, monetary, or exchange value.

This commonly understood meaning of the phrase "any other thing of value" is consistent with the statutory definition of the phrase "thing of value" in the Colorado Criminal Code. Section 18–1–901(3)(r), 8B C.R.S. (1986), defines "thing of value" as including "real property, tangible and intangible personal property, contract rights, choses in action, services, confidential information, medical records information, and any rights of use or enjoyment connected therewith."[4] Moreover, our prior

---

**4.** The commonly understood meaning of the term "thing of value" is further evidenced by the General Assembly's repeated use of that term in defining various crimes. *See, e.g.,* § 18–3–301(1), 8B C.R.S. (1986) (first degree

kidnapping); § 18–4–301(1), 8B C.R.S. (1986) (robbery); § 18–4–401(1)(a), 8B C.R.S. (1986) (theft); § 18–4–502, 8B C.R.S. (1986) (first degree criminal trespass); § 18–7–201(1), 8B C.R. S. (1986) (prostitution); § 18–10–102(2), 8B C.R.

decisions have not attributed a technical meaning to the phrase "thing of value," but rather have construed and applied that phrase in accordance with its commonly understood meaning. *See, e.g., People v. Marquez,* 692 P.2d 1089, 1097 (Colo.1984) (wallet, whether or not containing money, is a "thing of value" for purposes of the statutory definition of aggravated robbery); *Beasley v. People,* 168 Colo. 286, 289, 450 P.2d 658, 660 (1969) (" '[T]hing of value' as used in the short check felony statute is a phrase of sufficient generic import to encompass clearly within its meaning an executed lien waiver."); *cf. People v. Mason,* 642 P.2d 8, 13 (Colo.1982) (statutory definitions of prostitution, pandering, and pimping, all of which include money or other "thing of value" in their definitions, are not unconstitutionally vague).

In light of the context in which the phrase "any other thing of value" appears in section 12–47–128(5)(*l* ), it is clear that the legislature intended to prohibit employees of a tavern from soliciting patrons to purchase for the employee or any other employee not only alcoholic beverages, which are expressly mentioned in the statute, but also any other item that has some monetary, economic, or exchange value to the tavern patron. While the challenged phrase is broad, that fact alone does not render the statutory proscription unconstitutionally vague. In the instant case, it is undisputed that the charges arose out of the employees' solicitation of tavern patrons to purchase for those employees drinks of orange juice at the price of $6.00 per drink. Under these circumstances, the argument that the statutory language does not sufficiently inform persons of ordinary intelligence that nonalcoholic beverages are "things of value" is patently untenable. Whatever the outer limits of the phrase "any other thing of value" might be—a question we need not decide here—we have no hesitation in concluding that the phrase includes a nonalcoholic beverage, such as a glass of orange juice.

S. (1986) (gambling). The term "thing of value" also appears in the Colorado Constitution.

## IV.

◼ Since the statutory phrase "any other thing of value" is neither facially overbroad nor vague, the only remaining question is whether the statutory proscription is reasonably related to a legitimate governmental interest. We are satisfied that the statute passes constitutional muster under the "rational basis" standard of review.

The Twenty-First Amendment to the United States Constitution provides an important source of state authority, in supplementation of the state's general police power, for regulating the sale and distribution of intoxicating liquors. *LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342. We have previously recognized that this broad constitutional authority relating to the sale and consumption of alcoholic beverages includes the regulation of conduct within premises licensed to sell alcoholic beverages. *See Citizens for Free Enterprise v. Department of Revenue,* 649 P.2d 1054 (Colo.1982); *New Safari Lounge, Inc. v. City of Colorado Springs,* 193 Colo. 428, 567 P.2d 372 (1977). The General Assembly has expressly declared that the Colorado Liquor Code was enacted as an exercise of the state's police power "for the protection of the economic and social welfare and the health, peace, and morals of the people of this state." § 12–47–102(1), 5 C.R.S. (1985). The statutory prohibition of section 12–47–128(5)(*l* ) with respect to on-premises solicitations by tavern employees of tavern patrons for drinks and other things of value is clearly within the state's constitutional authority emanating from the Twenty-First Amendment to the United States Constitution, *LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342; *Citizens for Free Enterprise,* 649 P.2d 1054, and is reasonably related to that legislatively declared purpose of the Colorado Liquor Code. Section 12–47–128(5)(*l* ), therefore, comports with due process of law under both the United States and Colorado Constitutions. U.S. Const. amend. XIV; Colo. Const. art. II, § 25.

Colo. Const. art. XII, § 6 (bribery of officers) and § 7 (bribery and corrupt solicitation).

The judgment of the district court is accordingly reversed and the case is remanded to that court with directions to return the case to the county court for reinstatement of the criminal charges and for further proceedings.