**Robert E. FERGUSON, Defendant–Appellant,**

v.

**The PEOPLE of the State of Colorado, Plaintiff–Appellee.**

**No. 90SA497.**

Supreme Court of Colorado,
En Banc.

Feb. 3, 1992.
Rehearing Denied Feb. 24, 1992.

which proscribes as a class 4 felony the knowing infliction of sexual penetration by a psychotherapist on a client, is unconstitutionally overbroad in violation of the substantive due process rights of an accused, is violative of equal protection of the laws, or creates an unconstitutional presumption regarding a client's lack of capacity to consent and thereby relieves the prosecution of any burden of proof on the defendant's culpable mental state. The district court, in denying a motion for a judgment of acquittal following a jury verdict finding the defendant-psychotherapist guilty of four counts of aggravated sexual assault, upheld the constitutionality of the statutory proscription. We affirm the judgment of the district court.[1]

## I.

The defendant, Robert E. Ferguson, was charged with nine counts of aggravated sexual assault in violation of section 18–3–405.5(1), 8B C.R.S. (1988 Supp.). The charges were based on alleged acts of sexual intercourse between the defendant and a client on various dates between October 4, 1988, and March 28, 1989. At the time of the offenses charged, section 18–3–405.5 provided, in relevant part, as follows:

> (1)(a) Any actor who knowingly inflicts sexual penetration ... on a victim commits aggravated sexual assault on a client if:
>
> (I) The actor is a psychotherapist and the victim is a client of the psychotherapist; or
>
> (II) The actor is a psychotherapist and the victim is a client and the sexual penetration ... occurred by means of therapeutic deception.
>
> (b) Aggravated sexual assault on a client is a class 4 felony.
>
> * * * * * *
>
> (3) For the purposes of subparagraph (I) of paragraph (a) of subsection (1) ... of this section, consent by the client to the

Elvin L. Gentry, P.C., Elvin L. Gentry, Colorado Springs, for defendant-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether section 18–3–405.5, 8B C.R.S. (1988 Supp.),

---

1. Appropriate jurisdiction over this appeal lies in this court because the constitutionality of a statute is challenged. § 13–4–102(1)(b), 6A C.R.S. (1987).

sexual penetration ... shall not constitute a defense to such offense.[2]

Effective July 1, 1989, subsequent to the offenses charged in this case, the General Assembly amended section 18–3–405.5(3) to delete the reference to subparagraph (1)(a)(I) and to provide as follows: "Consent by the client to the sexual penetration ... shall not constitute a defense to such offense." Ch. 148, sec. 42, § 18–3–405.5(3), 1989 Colo.Sess. Laws 820, 831.

The statutory proscription under consideration defines a psychotherapist as "any person who performs or purports to perform psychotherapy," whether or not such person is licensed or certified by the state to practice psychotherapy. § 18–3–405.-5(4)(b), 8B C.R.S. (1988 Supp.). The term "psychotherapy" refers to "the treatment, diagnosis, or counseling in a professional relationship to assist individuals or groups to alleviate mental disorders, understand unconscious or conscious motivation, resolve emotional, relationship, or attitudinal conflicts, or modify behaviors which interfere with effective emotional, social, or intellectual functioning." § 18–3–405.5(4)(c), 8B C.R.S. (1988 Supp.). The term "therapeutic deception" is defined as "a representation by a psychotherapist that sexual ... penetration ... by the psychotherapist is consistent with or part of the client's treatment." § 18–3–405.5(4)(d), 8B C.R.S. (1988 Supp.).

The charges filed against the defendant were tried to a jury, which returned guilty verdicts on four counts and not guilty verdicts on the other five counts. Prior to sentencing, the defendant moved for a judgment of acquittal on the basis that section 18–3–405.5 violated due process of law and equal protection of the laws. The district court, after determining that no fundamental constitutional right was affected by the statutory proscription, concluded that section 18–3–405.5 was rationally related to the legitimate governmental interest of protecting psychotherapy clients, many of whom may have emotional or mental health problems for which they seek assistance from the psychotherapist. After denying the defendant's post-trial motion, the court sentenced the defendant to concurrent two-year terms on the four convictions. The defendant thereafter filed this appeal.

The defendant's contentions, as we understand them, may be summarized as follows: the criminal proscription against sexual assault on a client by a psychotherapist is constitutionally overbroad and, hence, violative of substantive due process rights guaranteed by the Fourteenth Amendment because it infringes on the fundamental privacy and associational rights of psychotherapists and clients to engage in a consensual act of sexual intercourse; the pre–1989 version of section 18–3–405.5(3) applicable to this case violates equal protection of the laws under the United States and Colorado Constitutions because it irrationally deprives psychotherapists of the consent defense when no such limitation is imposed on other health-care professionals,

---

**2.** Section 18–3–401(6), 8B C.R.S. (1986), defines "sexual penetration" as follows:

"Sexual penetration" means sexual intercourse, cunnilingus, fellatio, analingus, or anal intercourse. Emission need not be proved as an element of any sexual penetration. Any penetration, however slight, is sufficient to complete the crime.

The statutory scheme also proscribes as a class 4 felony sexual intrusion, which is defined in *section 18–3–401(5), 8B C.R.S. (1986),* as meaning "any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue, or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse." In addition, section 18–3–405.-5(2)(a), 8B C.R.S. (1988 Supp.), punishes as sexual assault, a class 1 misdemeanor, a psychotherapist's act of knowingly subjecting a client to sexual contact. Sexual contact is defined in section 18–3–401(4), 8B C.R.S. (1986), as follows:

"Sexual contact" means the knowingly touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowingly touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact can reasonably be construed as being for the purposes of sexual arousal, gratification, or abuse.

Because we deal in this case only with charges involving sexual penetration, we restrict our analysis to that type of unlawful sexual behavior.

and also because it eliminates the consent defense for psychotherapists who inflict sexual penetration on clients by means other than therapeutic deception while, at the same time, it preserves the consent defense for psychotherapists who inflict sexual penetration on clients by means of therapeutic deception; and the pre–1989 version of section 18–3–405.5(3) violates due process of law by creating an irrebuttable presumption that all psychotherapy clients lack the capacity to consent to sexual penetration, thereby relieving the prosecution of any burden of proof on a defendant's culpable mental state and creating a strict liability crime.[3]

## II.

We first address the defendant's claim that section 18–3–405.5 infringes on the alleged constitutionally protected privacy and associational rights of both psychotherapists and clients to engage in consensual sexual intercourse and thus constitutes facially overbroad legislation in violation of the Due Process Clause of the Fourteenth Amendment. The defendant's claim, in our view, proceeds from the faulty premise that the statutory proscription somehow implicates fundamental constitutional rights.

## A.

We have acknowledged on more than one occasion that the Colorado Constitution vests the General Assembly with the power to define criminal conduct and to establish legal components of criminal responsibility, including the affirmative defenses to various crimes. *E.g., People v. Low,* 732 P.2d 622, 627 (Colo.1987); *Hendershott v. People,* 653 P.2d 385, 390 (Colo.1982). The General Assembly has seen fit to exercise this power by proscribing certain sexual behavior irrespective of the element of consent. *See* § 18–6–201, 8B C.R.S. (1986) (married person's cohabitation with another punished as bigamy); § 18–6–301, 8B C.R.S. (1991 Supp.) (sexual relations be-

tween persons related within specified degrees of kinship proscribed as incest); § 18–7–201, 8B C.R.S. (1986) (sexual intercourse with any person not the offender's spouse, in exchange for money or other thing of value, proscribed as prostitution); § 18–7–206, 8B C.R.S. (1986) (to live on or be supported by money received by another person through prostitution punished as pimping).

Although the power to define and punish unlawful sexual behavior is vested in the General Assembly, that power is subject to overriding constitutional norms. A criminal statute, for example, may be challenged as constitutionally overbroad if, although apparently designed to punish activities that are not constitutionally protected, it threatens the existence of fundamental constitutional rights, such as First Amendment freedoms, by encompassing those constitutionally protected activities within its sweep even though the expressly prohibited activities might have been properly punished under a more carefully drafted statute. *See, e.g., Lewis v. City of New Orleans,* 415 U.S. 130, 134, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson,* 405 U.S. 518, 520–22, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408 (1972); *People v. Becker,* 759 P.2d 26, 29 (Colo.1988). Due to the fundamental character of the rights threatened by a constitutionally overbroad statute, a heightened level of scrutiny is applicable when a statutory proscription threatens the exercise of those rights. Under that heightened standard of review, a statutory proscription will be struck down unless the state can demonstrate that the statute is necessary to promote a compelling governmental interest. *E.g., Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1969); *Regency Services Corp. v. Board of County Comm'rs of Adams County,* 819 P.2d 1049, 1056 (Colo.1991); *Becker,* 759 P.2d at 29. Moreover, because the very existence of such a statutory proscription may cause others not before the court to refrain from

---

**3.** Because the defendant has not filed a reporter's transcript of the evidence presented at trial, we are not informed of the factual basis for the

charges. Our analysis of the defendant's claims is thus limited to the facial constitutionality of the statutory scheme.

exercising a fundamental constitutional right, expanded standing is accorded in overbreadth challenges in order to permit a party to assert not only the party's own constitutionally protected interests but also the constitutional interests of others. *E.g., Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *Becker,* 759 P.2d at 29. A statutory proscription is not facially overbroad, however, unless the overbreadth is "not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *People v. Batchelor,* 800 P.2d 599, 601 (Colo.1990) (quoting *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2918).

 In the absence of a fundamental constitutional right, the applicable test for reviewing a substantive due-process challenge to a statute is the rational-basis standard of review. *E.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–97, 102 S.Ct. 1186, 1191–93, 71 L.Ed.2d 362 (1982); *People v. Garcia,* 197 Colo. 550, 552–53, 595 P.2d 228, 230 (1979). Under the rational-basis standard, a presumption of constitutionality attaches to a statute, and the burden is on the party challenging the statute to establish beyond a reasonable doubt that the statutory proscription lacks a rational relationship to a legitimate governmental interest. *E.g., Regency Services,* 819 P.2d at 1056; *People v. Pharr,* 696 P.2d 235, 237 (Colo.1984).

## B.

Although there is no express right of privacy in any specific provision of the federal constitution, the United States Supreme Court has long recognized that there are certain activities which are constitutionally protected as fundamental rights under the aegis of constitutional privacy. These activities relate to such matters as, for example, the decision to marry, *Zablocki v. Redhail,* 434 U.S. 374, 384–86, 98 S.Ct. 673, 680–81, 54 L.Ed.2d 618 (1978), decisions relating to the begetting and bearing of children, *Carey v. Population Services Int'l,* 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977), the decision to live with relatives, *Moore v. East Cleveland,* 431 U.S. 494, 498–99, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977) (plurality opinion), and matters relating to child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). The Court also has recognized that there are certain intimate or private associational interests which, because of their profound effect on the personal aspects of one's life, qualify as fundamental constitutional rights. These associational interests, which may often coincide with specifically protected First Amendment interests, include participation in protected religious activities, *Wisconsin v. Yoder,* 406 U.S. 205, 215–19, 92 S.Ct. 1526, 1533–35, 32 L.Ed.2d 15 (1972), membership in political organizations, *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 214–16, 107 S.Ct. 544, 548–49, 93 L.Ed.2d 514 (1986), and, as in the case of protected privacy interests, activities and decisions relating to marriage and family relationships, *Moore,* 431 U.S. at 499–500, 97 S.Ct. at 1935. *See generally Roberts v. United States Jaycees,* 468 U.S. 609, 617–20, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984) (plurality opinion).

 Notwithstanding the elevated constitutional status accorded to certain privacy and associational interests, the Supreme Court has emphasized that there is no open-ended immunity for consenting adults to engage in any and all types of sexual behavior. On the contrary, the Court has emphasized that its fundamental-right jurisprudence does not stand for the proposition "that any kind of private sexual conduct between consenting adults is constitutionally insulated from state proscription." *Bowers v. Hardwick,* 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1988). Thus, while certain private activities and intimate relationships may qualify for the elevated status of fundamental constitutional rights, it has never been the law that consenting adults, solely by virtue of their adulthood and consent, have a constitutionally protected privacy or associational right to engage in any type of sexual behavior of their choice under any circumstances.

We acknowledge that effective psychotherapeutic diagnosis and treatment often may require the client to disclose to the psychotherapist highly intimate and personal details which the client reasonably expects will be treated as confidential. We also recognize that the client, during the course of treatment, may develop a deep emotional dependence on the psychotherapist. The phenomenon of transference, for example, can well account for some of the privacy and associational expectations that might be generated by the psychotherapist-client relationship.[4] One court described the significance of the transference phenomenon to psychotherapy as follows:

Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is "generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past." *Stedman's Medical Dictionary* 1473 (5th Lawyers' Ed.1982). Transference "is perhaps regarded as the most significant concept in psychoanalytical therapy, and one of the most important discoveries of Freud." *Zipkin v. Freeman*, 436 S.W.2d 753, 755 n. 1 (Mo.1968) (quoting Noyes & Kolb, *Modern Clinical Psychiatry* 505 (6th ed. 1963)).

\* \* \* \* \* \*

Transference is crucial to the therapeutic process because the patient "unconsciously attributes to the psychiatrist or analyst those feelings which [the patient] may have repressed towards [the patient's] own parents.... [I]t is through the creation, experiencing and resolution of these feelings that [the patient] becomes well." *L.L. v. Medical Protective Co.*, 122 Wis.2d 455, 362 N.W.2d 174, 177 (Wis.App.1984) (quoting D. Dawidoff, *The Malpractice of Psychiatrists* 6 (1973)). "Inappropriate emotions, both hostile and loving, directed toward the physician are recognized by the psychiatrist as constituting ... the transference. The psychiatrist looks for manifestations of the transference, and is prepared to handle it as it develops." ·*L.L.*, 362 N.W.2d at 177 (quoting Heller, *Some Comments to Lawyers on the Practice of Psychiatry*, 30 Temp.L.Q. 401, 401–02 (1957)). "Understanding of transference forms a basic part of the psychoanalytic technique." *Zipkin*, 436 S.W.2d at 755 n. 1 (quoting Blakiston's *New Gould Medical Dictionary* 1260 (2d ed. 1956)). The proper therapeutic response is countertransference, a reaction which avoids emotional involvement and assists the patient in overcoming problems. *Aetna Life & Casualty Co. v. McCabe*, 556 F.Supp. 1342, 1346 (E.D.Pa.1983).

*Simmons v. United States*, 805 F.2d 1363, 1364–65 (9th Cir.1986).

While a psychotherapy client, or even arguably a treating psychotherapist, may understandably claim a privacy or associational interest in disclosures occurring during the course of the professional relationship—a claim the constitutional status of which we need not and do not resolve in this case—we are satisfied that the scope of any such interest certainly does not give

4. The General Assembly, in obvious recognition of the fact that effective psychotherapeutic diagnosis and treatment require candid and open disclosure, has cloaked communications between the client and the psychologist with a statutory privilege. Section 13–90–107(1)(g), 6A C.R.S. (1987), which is designed to safeguard the client's privacy interests, states in relevant part as follows:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

\* \* \* \* \* \*

(g) A licensed psychologist shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall . a licensed psychologist's secretary, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity; nor shall any person who has participated in any psychological therapy, conducted under the supervision of a person authorized by law to conduct such therapy, including but not limited to group therapy sessions, be examined concerning any knowledge gained during the course of such therapy without the consent of the person to whom the testimony sought relates.

rise to any fundamental right on the part of the psychotherapist or the client to engage in sexual relations during the course of the professional relationship. Indeed, it has been forcefully stated that psychotherapist-client sex is the very antithesis of effective and responsible psychotherapy:

When the therapist mishandles transference and becomes sexually involved with a patient, medical authorities are nearly unanimous in considering such conduct to be malpractice. *L.L.*, 362 N.W.2d at 176–77 (citing Davidson, *Psychiatry's Problem with No Name: Therapist–Patient Sex*, 37 Am.J. Psychoanalysis 43, 48–49 (1977) ("[I]t is generally agreed that therapist-patient sex is psychologically deleterious for the involved woman patient and is unethical practice for the male practitioner."); Stone, *The Legal Implications of Sexual Activity Between Psychiatrist and Patient*, 133 Am.J. Psychiatry 1138, 1139 (1976) ("[T]he experts would ... agree ... that 'there are absolutely no circumstances which permit a psychiatrist to engage in sex with his patient.' All such instances constitute misuse of the transference.")).

*Simmons*, 805 F.2d at 1365. We thus have no hesitation in concluding that neither the treating psychotherapist nor the psychotherapy client has a fundamental constitutional right to engage in sexual intercourse with each other during the existence of the psychotherapist-client relationship and that, therefore, section 18–3–405.5 is not subject to overbreadth analysis.

### C.

Because section 18–3–405.5 does not infringe on any fundamental constitutional right, the statutory proscription need only comply with the rational-basis standard of review to satisfy due process. Under that standard, the defendant is required to establish beyond a reasonable doubt that the statutory proscription is not rationally related to any legitimate governmental interest.

There is no doubt in our minds that the State of Colorado may enact criminal legislation designed to protect not only nonconsenting victims of sexual assault but also other persons who, because of the existence of a distinctive dependency relationship with the offender or other special circumstances inherent in the relationship, are uncommonly susceptible to sexual exploitation. The crime of aggravated sexual assault by a psychotherapist on a client is that type of legislation. The state has a legitimate interest not only in protecting persons undergoing psychotherapy from being sexually exploited by the treating psychotherapist but also in regulating and maintaining the integrity of the mental-health profession. It is equally obvious to us that the legislative decision to criminally proscribe a psychotherapist's knowing infliction of sexual penetration on a psychotherapy client is reasonably related to these legitimate governmental interests. Section 18–3–405.5, therefore, comports with due process of law.

### III.

We next address the defendant's argument that section 18–3–405.5(3) violates equal protection of the laws because it deprives psychotherapists of the consent defense without depriving other health-care professionals of the same defense, and also because, according to the defendant, it eliminates the consent defense for psychotherapists who inflict sexual penetration by means other than therapeutic deception when no similar restriction is imposed on psychotherapists who inflict sexual penetration by means of therapeutic deception. Since the statutory scheme in question does not implicate any fundamental constitutional right, we analyze the defendant's equal protection arguments under the rational-basis standard of review.

The rational-basis standard does not require statutory classifications that are perfect, nor does it require that the statutory scheme address the "whole field of possible abuses." *In re Interrogatories*, 97 Colo. 587, 596, 52 P.2d 663, 667 (1935) (quoting *Farmers and Merchants Bank v. Federal Reserve Bank*, 262 U.S. 649, 661, 43 S.Ct. 651, 656, 67 L.Ed. 1157 (1923)); *see also Massachusetts Bd. of Re-*

*tirement v. Murgia,* 427 U.S. 307, 316, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520 (1976); *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). On the contrary, the General Assembly may properly address the more significant aspects of a problem by confining its restrictions "to those classes of cases where the need is deemed to be the clearest." *In re Interrogatories,* 97 Colo. at 597, 52 P.2d at 667 (quoting *Miller v. Wilson,* 236 U.S. 373, 384, 35 S.Ct. 342, 345, 59 L.Ed. 628 (1915)); *see also People v. Elliott,* 186 Colo. 65, 69–70, 525 P.2d 457, 459–60 (1974). So long as the classification is based on differences that are real and the classification is reasonably related to a legitimate governmental objective, it will survive an equal protection challenge under the rational-basis standard. *People v. Madril,* 746 P.2d 1329, 1333 (Colo.1987); *People v. Mason,* 642 P.2d 8, 12 (Colo.1982). It is against these principles that we must measure the defendant's equal protection arguments.

### A.

■ Although the General Assembly might have chosen to extend the statutory proscription, including the elimination of the consent defense, to other health-care professionals during the existence of a professional relationship, the fact that it made the decision to limit the statutory scheme to psychotherapists does not render the classification violative of equal protection of the laws. The special character of psychotherapeutic treatment, involving as it frequently does a person who is in a vulnerable emotional state and likely to develop an extreme dependency relationship with the therapist, provides a reasonable basis in fact for the legislative decision to limit the scope of the statutory scheme to the psychotherapeutic relationship. This limitation is reflective of a legislative judgment that there presently exists a more urgent need to address the problem of sexual exploitation in the psychotherapist-client relationship than in other health-care professional relationships. As we previously noted in resolving the defendant's substantive due process claim, the statu-

tory constraints imposed on psychotherapists are reasonably related to the state's legitimate interests in protecting psychotherapy clients from sexual exploitation and in maintaining the integrity of the psychotherapeutic profession.

### B.

■ We are similarly unpersuaded by the defendant's claim that section 18–3–405.5(3) is violative of equal protection of the laws because it eliminates the consent defense in cases of sexual penetration by means other than therapeutic deception, even though, in the defendant's view, no such restriction is applicable in cases of sexual penetration by means of therapeutic deception. The defendant's claim is erroneously premised on the assumption that the consent defense applies to the latter class of cases.

The defendant correctly points out that section 18–3–405.5(3) expressly eliminates the consent defense in the case of a violation of subsection 18–3–405.5(1)(a)(I), which prohibits a psychotherapist from knowingly inflicting sexual penetration on a client, but that section 18–3–405.5(3) makes no mention of subsection 18–3–405.5(1)(a)(II), which prohibits a psychotherapist from knowingly inflicting sexual penetration on a client by means of therapeutic deception. The absence of any reference to therapeutic deception in section 18–3–405.5(3), however, cannot reasonably be construed as a legislative endorsement of the consent defense in those cases. Although section 18–3–405.5(3) might have been more artfully drafted when it was enacted in 1988, it is clear from a consideration of the general and pre-existing provisions of the Colorado Criminal Code relating to consent that any specific reference in section 18–3–405.5(3) to sexual penetration by means of therapeutic deception was unnecessary.

Section 18–1–505(3), 8B C.R.S. (1986), states, in relevant part, as follows:

(3) Unless otherwise provided by this code or by the law defining the offense, assent does not constitute consent if:

\*　　\*　　\*　　\*　　\*　　\*

(c) It is given by a person whose consent is sought to be prevented by the law defining the offense; or

(d) It is induced by ... deception.

In light of these general provisions on the issue of consent, along with the obvious susceptibility of the client to sexual manipulation and exploitation during psychotherapy, it would be fanciful in the extreme to conclude that the General Assembly intended to abrogate the consent defense in all situations involving the psychotherapist's knowing infliction of sexual penetration on a client except where the sexual penetration occurred by means of therapeutic deception. Because the already existing provisions of section 18–1–505(3) prohibited an offender from relying on consent as an affirmative defense when the consent was induced by deception, there was no reason for the General Assembly in 1988 to expressly negate the consent defense in the case of a psychotherapist's knowing infliction of sexual penetration on a client by means of therapeutic deception.

We view the 1989 amendment to section 18–3–405.5(3), which states that the client's consent shall not constitute a defense to "such offense," Ch. 148, sec. 42, § 18–3–405.5(3), 1989 Colo.Sess. Laws 820, 831, as nothing more than a legislative effort to make explicit what was clearly implied in the pre–1989 version of section 18–3–405.5(3) and was otherwise resolved by the preexisting statutory provisions relating to consent in section 18–1–505(3)(c) and (d). We thus hold that, contrary to the defendant's claim, the pre–1989 version of section 18–3–405.5(3) did not permit the consent defense in a case where the psychotherapist inflicted sexual penetration on a client by means of therapeutic deception.

## IV.

▮ The defendant's final argument is that the statutory elimination of the consent defense creates an irrebuttable presumption that all psychotherapy clients lack the capacity to consent to sexual intercourse with their psychotherapist and that this presumption has the effect of relieving the prosecution of its burden of proving

any mental culpability element and creating a strict liability case. The defendant's conclusion regarding the prosecution's burden of proof does not follow logically from the asserted presumption regarding the client's inability to consent.

Section 18–3–405.5(1)(a) expressly incorporates the culpable mental state of "knowingly" into the statutory definition of aggravated sexual assault on a client by a psychotherapist. A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware that his conduct is of such a nature or that such circumstance exists, and a person acts knowingly with respect to a result when the person is aware that the conduct is practically certain to cause a result. § 18–1–501(6), 8B C.R.S. (1986). A psychotherapist, therefore, acts "knowingly" with respect to inflicting sexual penetration on a client when the psychotherapist is aware that he is inflicting sexual penetration on a person who seeks or is receiving psychotherapy from him or when the psychotherapist is aware that his conduct is practically certain to cause submission of the client to an act of sexual penetration.

We have no quarrel with the proposition that the elimination of the consent defense results in the functional equivalent of an irrebuttable presumption that all psychotherapy clients lack the capacity to consent to an act of sexual penetration by a psychotherapist during the existence of the psychotherapist-client relationship. Even when so viewed, however, such a presumption does not result in relieving the prosecution of its basic constitutional burden of proving beyond a reasonable doubt all the essential elements of the crime of aggravated sexual assault on a client by a psychotherapist, including the psychotherapist's culpable mental state of "knowingly." Stated otherwise, the issue of consent is of no more significance in the prosecution of a psychotherapist for aggravated sexual assault on a client than is the issue of consent in the prosecution of other sexual crimes, the essential elements of which are defined without regard to the consent of the person

victimized by the offender's behavior and must be proven by the prosecution beyond a reasonable doubt for a valid conviction. *See, e.g.,* § 18–6–201, 8B C.R.S. (1986) (bigamy); § 18–6–301, 8B C.R.S. (1991 Supp.) (incest); § 18–7–201, 8B C.R.S. (1986) (prostitution); § 18–7–206, 8B C.R.S. (1986) (pimping). The notion that the elimination of the consent defense somehow relieves the prosecution of its burden of proving any mental culpability of the crime, and thereby results in a strict liability offense, is both legally and logically untenable.

The judgment of the district court is affirmed.