Russell L. BROWN, Jr., Appellant,

v.

COLORADO LIMITED GAMING CONTROL COMMISSION and the Colorado Division of Gaming, Appellees.

No. 97CA1542.

Colorado Court of Appeals,
Div. IV.

March 4, 1999.

As Modified on Denial of Rehearing
June 3, 1999.

Holley, Albertson & Polk, P.C., Scott D. Albertson, Eric E. Torgersen, Golden, Colorado, for Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Heather Shulman, Assistant Attorney General, Denver, Colorado, for Appellees.

Opinion by Judge ROTHENBERG.

Appellant, Russell Brown, seeks review of Colorado Limited Gaming Control Commis-

sion (Commission) Regulation No. 47.1–1901 (Rule 19), 1 Code Colo. Reg. 207–1, that was promulgated to define the boundaries of the area in which limited gaming is permitted in the city of Black Hawk. We affirm.

Brown owns a portion of the vacant property in Black Hawk that is commonly referred to as the Boston and Colorado Smelting Company property (Boston and Colorado). The Boston and Colorado property contains several mill sites, the boundaries of which have been identified on survey maps dating back to 1866. When the property was historically conveyed, however, it was usually described by reference to metes and bounds, rather than by reference to the mill sites.

Pursuant to its authority under the Limited Gaming Act of 1991, § 12–47.1–101, et seq., C.R.S.1998, the Commission proposed Rule 19 to determine the limited gaming area district in the city of Black Hawk. The Commission then held several public hearings in compliance with the procedure for rule-making as delineated in § 24–4–103, C.R.S.1998.

During the Rule 19 hearings, an issue arose whether all or only part of the Boston and Colorado property was situated within the limited gaming area district. A similar question arose regarding another property west of the Boston and Colorado property (the Richman property).

After hearing evidence regarding both the Boston and Colorado property and the Richman property, the Commission determined that the majority of the Richman property was within the gaming district. However, it determined that the gaming district extended only into the Boston and Colorado property as far as the northern mill site boundaries. Accordingly, that determination was reflected in the description of the gaming district set out in Rule 19.

Brown seeks review of the adoption of Rule 19 pursuant to § 12–47.1–521, C.R.S 1998, and § 24–4–106, C.R.S.1998.

## I.

Brown contends the Commission acted unreasonably, arbitrarily, and capriciously by excluding from the limited gaming area district the Boston and Colorado property that is located north of the mill site boundaries. We disagree.

Rules adopted pursuant to a statutory rulemaking proceeding are presumed valid. The burden is on the challenging party to establish their invalidity by demonstrating that the rulemaking body acted in an unconstitutional manner, exceeded its statutory authority, or otherwise acted in a manner contrary to statutory requirements. Section 24–4–106(7), C.R.S.1998. *Colorado Ground Water Commission v. Eagle Peak Farms, Ltd.*, 919 P.2d 212 (Colo.1996); *Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue*, 919 P.2d 894 (Colo.App.1996).

The standard of review for a rulemaking proceeding is one of reasonableness of the agency action. *Colorado Ground Water Commission v. Eagle Peak Farms, Ltd.*, supra.

Whether an action is reasonable turns on the nature of the determination or action by the administrative agency. In *Citizens for Free Enterprise v. Department of Revenue*, 649 P.2d 1054 (Colo.1982), the supreme court described the types of rules promulgated by an agency as a continuum. At one end of the continuum, rules are based primarily upon policy considerations with factual determinations playing only a tangential role. For such rules, specific factual support is not required, although the reasoning process that led to the adoption of the rule must be defensible.

At the other end of the continuum, the necessity for the administrative rule turns upon discrete facts capable of demonstrative proof. The reasonableness of the agency action in such cases depends upon the presence of factual support. *Citizens for Free Enterprise v. Department of Revenue*, supra.

Under that standard, a reviewing court must ensure that the regulation is the product of reasoned decision-making fairly defensible in light of the material before the agency, but the court may not substitute its

judgment for that of the administrative agency. *Citizens for Free Enterprise v. Department of Revenue, supra*; *Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue, supra.*

### A.

■ In support of his contention that the Commission acted unreasonably, arbitrarily, and capriciously, Brown more specifically asserts that the Commission treated the Boston and Colorado property and the area surrounding the Richman property in a disparate manner when it determined the gaming area boundaries. We are not persuaded.

Colo. Const. art. XVIII, § 9, provides, in pertinent part, that:

Limited gaming shall take place only in the existing Colorado cities of: . . . the City of Black Hawk, county of Gilpin. . . . Such limited gaming shall be further confined to the commercial districts of said cities as said districts are respectively defined in the city ordinances adopted by: . . . the City of Black Hawk on May 4, 1978. . . .

In accordance with the constitutional provision, § 12–47.1–105, C.R.S.1998, restricts gaming in Black Hawk to the commercial district as defined by the city ordinance adopted on May 4, 1978.

That ordinance, City of Black Hawk Ordinance 78–4 (May 4, 1978), adopted a zoning map for the city of Black Hawk (the 1978 map). The 1978 map showed the areas of Black Hawk that were then zoned commercial, but the map was faded, torn, obscure, and in some places, illegible. It also was not drawn to any discernible scale and did not specifically identify all of the boundaries of Black Hawk's commercial district.

Because the 1978 map was ambiguous in the area containing both the Boston and Colorado property and that surrounding the Richman property, the Commission had to determine what was intended as the boundary of Black Hawk's commercial district in 1978. In doing so, the Commission had to apply the rule of construction for determining boundaries set forth in Ordinance 78–4, § 3, which states in part that:

Unless otherwise specified on the official Zoning Map, zoned boundaries shall be construed to lie: On the center lines of streets and alleys; on lot lines or platted subdivisions; on railroad right-of-way boundaries; on the boundary lines of zoning districts or incorporated areas or on section lines.

Ordinance 78–4 does not require the district boundary to follow ownership boundaries.

At the public hearings held by the Commission, conflicting evidence was presented regarding the controlling boundary of the commercial district. City officials relied on an 1866 survey map commonly known as the Albert and Johnson map, which Black Hawk had once adopted as its official city map. This map platted the mill sites contained within the Boston and Colorado property, but did not reference either the Boston and Colorado property or the Richman property.

City officials maintained that the Albert and Johnson survey map should be used as the base map for purposes of interpretation. According to the city officials, that survey map supported the exclusion of part of the Boston and Colorado property from the commercial district boundaries as contained in the 1978 map.

Brown presented evidence relying on another map dated 1896 which, according to him, proved that all of the Boston and Colorado property was within the area of Black Hawk zoned commercial in 1978.

After examining the 1978 map, the rule of construction from Ordinance 78–4, and the other evidence presented at the hearings, the Commission adopted the mill site boundaries as the northern boundary of the gaming district in the area of the Boston and Colorado property. It determined that they were more representative of the 1978 commercial district as depicted on the 1978 map; and that adoption of the outer boundary of the Boston and Colorado property, as urged by Brown, would be inconsistent with the depiction of the commercial district in the 1978 map.

Thus, while the evidence was conflicting, we conclude there was record support for the Commission's determination that certain por-

tions of the Boston and Colorado property were outside the boundary of the gaming district, but that the majority of the Richman property was within its boundary. Accordingly, we conclude the Commission's determination was reasonable and must be upheld.

### B.

We also reject Brown's related contention that the Commission acted inconsistently with regard to the Boston and Colorado Property and the Richman property because, in determining the boundaries of the gaming district, the Commission refused to use the Boston and Colorado property's historical metes and bounds description. According to Brown, the Commission did use the historical metes and bounds description as to the area surrounding the Richman property.

However, contrary to Brown's contention, the Commission did not rely on the historical metes and bounds description for the Richman property. In fact, it specifically rejected that description in determining the gaming district boundary surrounding the Richman property.

The 1978 map identified several addresses on Richman Street that were labeled as being inside the commercial district. As a result, the Commission included those parcels in the limited gaming district, but difficulty arose in trying to identify property boundaries which conformed to the area visually depicted on the 1978 map. Using a conservative approach, the Commission rejected the metes and bounds description of the Richman property as the controlling boundary and, instead, adopted the property boundaries associated with the specific addresses as part of the gaming district.

We therefore conclude there is factual support for the Commission's resolution of the gaming district boundary and, therefore, that the Commission did not act unreasonably, arbitrarily, or capriciously.

### II.

Nor do we agree with Brown's contentions that the Commission failed to consider certain evidence offered by him at the June 1997 hearing, and that Rule 19 is invalid because the Commission failed to maintain a complete record of the proceedings.

Brown was given an opportunity to present evidence in support of his arguments at two separate hearings and was allowed to supplement the record with new exhibits at the June hearing over the objection of one of the commissioners. The new evidence did not compel a different determination by the Commission.

As to Brown's assertion that the Commission failed to maintain a complete record of the proceedings, it is true that the record was incomplete when he filed his opening brief in this action. However, the record was supplemented with the missing portions prior to the filing of the answer brief and Brown was thus afforded the opportunity fully to present his appeal. He also submitted a supplemental opening brief and reply brief after the record had been made whole.

We therefore conclude the Commission complied with the rule-making requirements and did not act unreasonably, arbitrarily, or capriciously in adopting Rule 19.

The adoption of the rule is affirmed.

Judge NEY and Judge RULAND concur.