The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 3, 2025

**2025COA64**

**No. 24CA1019, *Netflix, Inc. v. Department of Revenue of the State of Colorado* — Taxation — Sales Tax — Tangible Personal Property — Digital Goods**

A division of the court of appeals reviews the district court's summary judgment order concluding that the sale of a Netflix subscription is not the sale of tangible personal property and is, therefore, not taxable under Colorado's retail sales tax law.  The division reverses, concluding that Netflix sells tangible personal property at retail when it sells subscriptions such that those sales are taxable under the sales tax statute.

COLORADO COURT OF APPEALS                                    **2025COA64**

Court of Appeals No. 24CA1019
City and County of Denver District Court No. 23CV31825
Honorable Sarah B. Wallace, Judge

Netflix, Inc.,

Plaintiff-Appellee,

v.

Department of Revenue of the State of Colorado and Heidi Humphreys, in her
official capacity as the Executive Director of the Department of Revenue of the
State of Colorado,

Defendants-Appellants.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE GROVE
Welling and Johnson, JJ., concur

Announced July 3, 2025

Snell & Wilmer L.L.P., Stephanie A. Kanan, Denver, Colorado; Latham &
Watkins LLP, Jean A. Pawlow, Eric J. Konopka, Washington, D.C.; Latham &
Watkins LLP, Kavya R. Dunn, New York, New York, for Plaintiff-Appellee

Philip J. Weiser, Attorney General, Emma Garrison, Senior Assistant Attorney
General, Kevin Chen, Assistant Attorney General, Denver, Colorado, for
Defendants-Appellants

¶ 1 In this dispute concerning the scope of Colorado's retail sales tax law, defendants, the Colorado Department of Revenue (DOR) and DOR Executive Director Heidi Humphreys, appeal the district court's judgment entered in favor of plaintiff, Netflix, Inc. In granting Netflix's summary judgment motion, the district court concluded that the sale of a Netflix subscription is not the sale of tangible personal property and is, therefore, not taxable under Colorado law. We disagree and thus reverse and remand for further proceedings.

## I. Background

### A. Historical Retail Sales Taxation in Colorado

¶ 2 In 1935, the General Assembly enacted the Emergency Retail Sales Tax Act of 1935 (the sales tax statute), which remains largely unchanged. Ch. 189, 1935 Colo. Sess. Laws 1000-22 (codified as amended at §§ 39-26-101 to -129, C.R.S. 2024). The statute imposes a tax on "the purchase price paid or charged upon all sales and purchases of tangible personal property at retail." § 39-26-104(1)(a), C.R.S. 2024. It provides that "'[s]ale' or 'sale and purchase' includes installment and credit sales and the exchange of property as well as the sale thereof for money; every such

1

transaction, conditional or otherwise, for a consideration, constituting a sale; and the sale or furnishing of electrical energy, gas, steam, telephone, or telegraph services." § 39-26-102(10), C.R.S. 2024. It further explains that "'[t]angible personal property' means corporeal personal property." § 39-26-102(15)(a)(I). "Tangible personal property" "embraces all goods, wares, merchandise, products and commodities, and all tangible or corporeal things and substances that are dealt in and capable of being possessed and exchanged, except as set forth in this subsection (15)."[1] *Id.*

¶ 3        In 1952, the DOR promulgated regulations clarifying that "tangible personal property"

> does not include real estate or any interest therein or improvements thereon; nor does it include book accounts, stocks, bonds, mortgages, notes and other evidence of debt, insurance certificates or policies, hunting, fishing or other licenses, or uncancelled United States postage or revenue stamps sold for postage or revenue purposes.

---

[1] Subsection (15) of section 39-26-102, C.R.S. 2024, exempts from taxation sales of newspapers and certain computer software, neither of which are at issue in this appeal.

Colo. Dep't of Revenue, *Retail Sales Tax Use Tax Law and Stores License Law Revised and Amended also Rules and Regulations Relating Thereto* § 33, at 60 (1952), https://perma.cc/56XC-UMK2 (1952 Regulations). In addition to these exclusions, the 1952 regulations explain that "[t]angible personal property includes all other physical existing articles or things (except[] newspapers, which are excluded by the statute)." *Id.*

### B. Taxation of Digital Goods

¶ 4 The sales tax statute was passed in an analog world, decades before the advent of digital communications. As technology evolved, however, the DOR treated many — although not all — of what came to be known as "digital goods" as taxable under the sales tax statute. These goods include e-books and portable document format (PDF) files, as well as digitally delivered newspapers, photographs, videos, manuals, and reports.

¶ 5 In 2021, the DOR promulgated an administrative rule (the DOR rule) seeking to "provide clarification on the definition of tangible personal property." Tax'n Div. Rule 39-26-102(15), 1 Code Colo. Regs. 201-4. The DOR rule specifies that "[t]he method of delivery does not impact the taxability of a sale of tangible personal

property," and notes that "methods used to deliver tangible personal property under current technology include, but are not limited to, the following: compact disc, electronic download, and internet streaming." *Id.* at Rule 39-26-102(15)(4). The rule provides several examples of situations in which sales tax is due on a purchase, including the following:

> (c) Example 3: Purchaser buys a movie through the internet, and then downloads the movie to the purchaser's computer. Sales tax is due on the purchase price of the movie.

> (d) Example 4: Purchaser buys a movie, which purchaser accesses through an internet browser. Purchaser does not save a copy of the movie to purchaser's computer. Sales tax is due on the purchase price of the movie.

> (e) Example 5: Purchaser pays a monthly subscription fee, which allows purchaser to select and stream movies and television shows from a library of available titles. Sales tax is due on the monthly fee.

*Id.*

¶ 6    Later that year, the General Assembly amended the sales tax statute to clarify that "'[t]angible personal property' includes digital goods" and that "[t]he method of delivery does not impact the

4

taxability of a sale of tangible personal property." § 39-26-102(15)(b.5)(I), C.R.S. 2024.[2] Like the DOR rule, the amended sales tax statute says that "[e]xamples of methods used to deliver tangible personal property under current technology include but are not limited to compact disc, electronic download, and internet streaming." *Id.* It also specifies that "'digital good' means any item of tangible personal property that is delivered or stored by digital means, including but not limited to video, music, or electronic books." § 39-26-102(15)(b.5)(II).

## C.    Netflix

¶ 7      Netflix offers subscriptions to Colorado consumers under which subscribers agree to pay a flat monthly fee in exchange for unlimited access to its online library of movies, television shows, and games. Netflix's content library changes regularly; its menus and recommendations are tailored to each subscriber based on individual preferences and viewing habits. When viewing Netflix

---

[2] The legislative declaration for House Bill 21-1312, which included the provisions later codified at section 39-26-102(15)(b.5)(I), states that the definition of "'digital good' codifies [the DOR's] long-standing treatment of digital goods, as reflected in its rule, and neither expands nor contracts the definition of 'tangible personal property.'" Ch. 299, sec. 1(1)(c)(II), 2021 Colo. Sess. Laws 1788-89.

content, customers may play, pause, fast-forward, and rewind without restriction. Although some content can be downloaded and stored on devices for offline viewing, Netflix provides no physical equipment to its subscribers. Instead, subscribers must use their own internet connection and internet-connected devices to view or play Netflix content.

¶ 8 When a subscriber selects content to view, Netflix transmits the selected show's or movie's data from its servers (called "open connect appliances") via the internet to the subscriber's device; the data are then converted to images and sounds. During this process, data may be stored temporarily on the subscriber's device for buffering to ensure uninterrupted viewing.

### D. Procedural History

¶ 9 In 2013, Netflix requested from the DOR a private letter ruling that its sales of streaming subscriptions are not taxable as sales of tangible personal property. The DOR declined to provide the requested ruling. But after first determining that Netflix owed millions in uncollected sales tax, the DOR abated the amount assessed to provide the opportunity to address the issue initially through rulemaking.

¶ 10    After the DOR rule was promulgated and the 2021 amendments to the sales tax statute were enacted, Netflix remitted the sales tax collected on streaming subscriptions sold during three specific periods:

- January 2021 (before the DOR rule was in effect);

- March 2021 (after the DOR rule was in effect but before the sales tax statute was amended); and

- July 2021 (after the amended sales tax statute was in effect).

Netflix then sought a refund of these remitted amounts. The DOR denied the request.

¶ 11    Netflix appealed the DOR's denial of its refund request in the district court. There, as relevant to this appeal, Netflix argued that its subscriptions are not taxable because the sale of a subscription is not a sale of tangible personal property. It further argued that, to the extent that the DOR rule or the amended sales tax statute authorizes the application of sales tax to Netflix subscriptions, (1) the rule conflicts with the sales tax statute it purported to implement, and (2) both the rule and statute violate the Taxpayer's

Bill of Rights (TABOR), Colo. Const. art. X, § 20, as they implement a new tax or tax policy change without voter approval.

¶ 12    The DOR moved for a determination of questions of law, while Netflix moved for summary judgment. The district court denied the DOR's motion and granted Netflix's motion, reasoning that "Netflix's streaming service is not tangible personal property" because, "while capable of being seen, [it] is not capable of being touched and therefore is not taxable under [the sales tax statute]." The district court declined to address the remaining issues before it concerning the DOR rule and the amended sales tax statute.

¶ 13    The DOR now appeals.

## II.    Taxability of Sales of Netflix Subscriptions

¶ 14    The threshold question at the heart of this dispute is whether Netflix subscriptions are "tangible personal property" under the 1935 version of the sales tax statute. We conclude that they are.

### A.    Standard of Review and Applicable Law

¶ 15    We review an order granting summary judgment de novo. *Wagner v. Planned Parenthood Fed'n of Am., Inc.*, 2019 COA 26, ¶ 6, *aff'd sub nom. Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51. "Summary judgment is appropriate when the

pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *McIntire v. Trammell Crow, Inc.,* 172 P.3d 977, 979 (Colo. App. 2007); *see* C.R.C.P.56(c). When considering a motion for summary judgment, a court must draw all favorable inferences that could be reasonably drawn from the evidence in favor of the nonmoving party. *Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 465-66 (Colo. 2003).

¶ 16    We also review issues of statutory interpretation de novo. *Jordan v. Panorama Orthopedics & Spine Ctr., PC,* 2015 CO 24, ¶ 14. "In construing a statute, we aim to effectuate the General Assembly's intent." *People v. Weeks,* 2021 CO 75, ¶ 25. "Our first step in this endeavor is to inspect 'the language of the statute, giving its words and phrases their plain and ordinary meaning.'" *Id.* (quoting *McCulley v. People,* 2020 CO 40, ¶ 10). "If the statutory language is unambiguous, we apply the words as written without resort to other rules of statutory interpretation." *People v. Shores,* 2016 COA 129, ¶ 16. If, however, no statutory definitions are provided, we may look to dictionary definitions to determine the plain and ordinary meaning of words. *People v. Janousek,* 871 P.2d

9

1189, 1196 (Colo. 1994). "We discern the clarity or ambiguity of the statutory language by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *People v. Buerge*, 240 P.3d 363, 367 (Colo. App. 2009). In addition, we must interpret a statute in a way that best effectuates the purpose of the legislative scheme. *Benz v. People*, 5 P.3d 311, 315 (Colo. 2000). Further, we generally defer to the interpretation of a statute given by the body charged with its administration. *Cendant Corp. & Subsidiaries v. Dep't of Revenue*, 226 P.3d 1102, 1106 (Colo. App. 2009); *Brighton Pharmacy, Inc. v. Colo. State Pharmacy Bd.*, 160 P.3d 412, 417-18 (Colo. App. 2007).

## B.    Analysis

¶ 17     As noted, the sales tax statute defines "tangible personal property" as "corporeal personal property" without elaborating on either phrase. Thus, both parties argue extensively about the meaning of this definition, resorting to various contemporary sources that might have informed the General Assembly's understanding in 1935, when the sales tax statute was passed. Netflix contends that "tangible personal property" includes only physical objects that have a real body that can be both seen and

10

touched. The DOR, meanwhile, argues for a broader understanding of the statute's coverage — asserting that tangible personal property includes things that are perceptible to the senses, have some degree of "physical presence capable of transfer," and ultimately are not intangible rights.[3] Although the DOR does not concede that Netflix subscriptions are not susceptible to touch, it argues that we need not resolve this question because the definition of "tangible personal property" is broad enough to encompass things that are "beyond the sense of touch."

¶ 18     We agree with the DOR's interpretation. The sales tax statute expressly states that "'[t]angible personal property' means corporeal personal property." § 39-26-102(15)(a)(I). And our review of the contemporaneous understanding of "corporeal" reveals that that term encompasses things that can be perceived by any of the senses — not exclusively the sense of touch. The 1933 edition of Black's Law Dictionary, for example, defines "corporeal property" as that which "affects the senses, and may be seen and handled, as

---

[3] To be sure, the DOR does not claim that all tangible personal property must exhibit these traits. It argues only that these traits are sufficient to render Netflix subscriptions tangible personal property.

11

opposed to incorporeal property, which cannot be seen or handled, and exists only in contemplation." Black's Law Dictionary 443 (3d ed. 1933). While Netflix asserts that the "seen and handled" language supports its conclusion that physicality is a necessary component of corporeal property, the comments accompanying the 1933 Black's definition explain that this understanding was outdated at the time the sales tax statute was passed:

> In Roman law, the distinction between things corporeal and incorporeal rested on the sense of touch; tangible objects only were considered corporeal. *In modern law, all things which may be perceived by any of the bodily senses are termed corporeal,* although a common definition of the word includes merely that which can be touched and seen.

*Id.* (emphasis added). In other words, while physical touch distinguished corporeal from incorporeal things in ancient times, by 1933 the law had evolved along with advancing technology. The somewhat narrower "common definition" of "corporeal property" does not change this conclusion; to the contrary, we presume that the General Assembly "understands the *legal import* of the words it uses and does not use language idly." *Dep't of Transp. v. Stapleton,* 97 P.3d 938, 943 (Colo. 2004) (emphasis added); *see also* § 2-4-101,

12

C.R.S. 2024 ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").  Even if the popular understanding of "corporeal property" did not fully align with the technical legal definition in 1933, we conclude that the phrase encompasses not just things with a physical body but rather all things perceptible to "any of the bodily senses."[4]  Thus, a Netflix subscription is corporeal property without regard to whether it can be seen and handled.

¶ 19　　We find support for this conclusion in the Arizona Supreme Court's 1943 interpretation of its state's sales tax statute enacted in 1939.  Providing more detail than the Colorado sales tax statute enacted four years prior, the Arizona statute defined "tangible personal property" as "personal property which may be seen, weighed, measured, felt, touched, or is in any other m[a]nner perceptible to the senses."  *State v. Jones*, 137 P.2d 970, 970-71 (Ariz. 1943) (quoting Ariz. Code Ann. § 73-1302 (1939)) (holding

---

[4] The modern legal definition of "corporeal property" is at least as broad as it was in 1933; as relevant here, it includes "[p]roperty that can be perceived, as opposed to incorporeal property."  Black's Law Dictionary 1473 (12th ed. 2024).

that single plays from "coin operated electric automatic phonograph machines" — essentially, jukeboxes — were subject to state sales tax because "[t]he playing of the record is perceptible to the sense of hearing"). While Netflix correctly points out that the Arizona statute is more detailed than Colorado's, we disagree that it sweeps more broadly. To the contrary, as discussed above, the contemporary legal definition of "corporeal property" likewise would have encompassed jukebox plays because they were perceptible to the purchaser's sense of hearing.

¶ 20    Moreover, the contemporaneous understanding of personal property presented a binary choice between corporeal and incorporeal property. *See* William C. Robinson, *Elementary Law* § 39, at 23 (Boston, Little, Brown & Co. 1882) ("Property, as to its intrinsic character, is of two kinds; Corporeal and Incorporeal."). And corporeal and incorporeal property were distinguished by their existential nature:

> Property may be corporeal or incorporeal according *as the object of the right is material, tangible, and subject to possession*, or intangible and abstract. Incorporeal personal property consists of certain valuable privileges such as patents or copyrights; and of claims against persons or corporations such as debts,

bonds, stock, bank deposits, et cetera, which are referred to as choses in action. Choses in action were regarded by the common law as things in possibility, recoverable by suit, and not yet reduced to possession. Where evidenced by a note, certificate of stock, or other document, the paper is a chose in possession, but the right evidenced thereby is incorporeal, a chose in action.

Henry Winthrop Ballantine, *Personal Property and Bailments: Acquisition of Personal Property*, in 2 *Modern American Law* § 4, at 4-5 (Eugene Allen Gilmore & William Charles Wermuth eds., 1921).

¶ 21 In other words, property must be either corporeal or incorporeal, and incorporeal property refers to abstract rights that have no real existence perceptible to the senses, even if the possession of such rights can be represented in a physical form. Indeed, the 1952 DOR regulations specifically stated that "tangible personal property" excludes abstract property like "book accounts, stocks, bonds, mortgages, notes and other evidence of debt, insurance certificates or policies, hunting, fishing or other licenses, or uncancelled United States postage or revenue stamps sold for postage or revenue purposes." 1952 Regulations § 33, at 60. And those same regulations explained that "[t]angible personal property includes *all other physical existing articles or things*." *Id.* (emphasis

15

added). The images and sounds that a Netflix subscription permits customers to view and hear physically exist because subscribers can perceive them with their eyes and ears; they are not abstractions. A Netflix subscription must therefore be corporeal.[5]

¶ 22　Finally, we observe that absurd results would follow if physical touch were a prerequisite of tangibility for the purposes of the sales tax statute. It is a reality of modern life that substantial amounts of goods previously existing only in a form susceptible to touch are now routinely and increasingly sold in digital form — photographs, music, television shows, movies, newspapers, magazines, and educational content, to name just a few. The legislature obviously intended to tax such goods when passing the sales tax statute. Casting aside nearly a century of historical practice simply because technological advancements have altered the specific form of

---

[5] We acknowledge that in *American Multi-Cinema, Inc. v. City of Westminster*, 910 P.2d 64, 66-67 (Colo. App. 1995) (*AMC*), a division of this court held that "customers who pay a fee to watch the running of a motion picture" in a theater are not "users" of "tangible personal property." *AMC*, however, is distinguishable. The case involved a use tax imposed by a city ordinance rather than a sales tax imposed by the 1935 version of the sales tax statute, and it was undisputed that the physical copies of the films themselves qualified as "tangible personal property." *Id.* at 65.

delivery — while leaving the product itself largely unchanged — is a step that we are not willing to take. *Cf. Walgreen Co. v. Charnes*, 819 P.2d 1039, 1044 (Colo. 1991) ("[U]se and sales taxes are part of a comprehensive legislative scheme to equally tax the purchase of goods.").

¶ 23    Because we conclude that Netflix sells tangible personal property at retail when it sells subscriptions such that those sales are taxable under the sales tax statute, we need not reach the remaining issues concerning the propriety of the DOR rule and the amendments to the sales tax statute.[6]

### III.    Disposition

¶ 24    We reverse the judgment and remand the case for further proceedings consistent with this opinion.

JUDGE WELLING and JUDGE JOHNSON concur.

---

[6] The district court incorrectly determined that, in light of its contrary conclusion that Netflix's subscription service is not tangible personal property, it did not need to reach the remaining issues before it. Had we reached the same conclusion as the district court regarding the tangibility of Netflix subscriptions, we would have needed to determine whether the DOR rule and the amended sales tax statute, which appear to approve taxation of Netflix subscription sales, violate TABOR, as Netflix alleges.

17